**In re Francis Joseph KANE, Debtor.**

**No. 05–31145BKC–SHF.**

United States Bankruptcy Court,
S.D. Florida.

Jan. 4, 2006.

Michael R. Bakst, West Palm Beach, FL, for trustee.

John F. Longley, Esq., Port St. Lucie, FL, for debtor.

### ORDER OVERRULING OBJECTION TO CLAIMED EXEMPTIONS

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS CAUSE came on to be heard on July 26, 2005, upon the Trustee's Objection to Amended Claimed Exemptions and Application for Turnover ("Objection to Claimed Exemptions") (C.P. 17), filed by Michael R. Bakst, Chapter 7 Trustee ("Trustee"). By way of his Objection to Claimed Exemptions, the Trustee objects to the Debtor's claimed exemptions as to his individual retirement account maintained with SmithBarney citigroup under Account No. 431–66730–13, in the approximate amount of $178,000.00. The Court, having considered the Objection to Claimed Exemptions, together with the evidence adduced at the July 26, 2005 hearing, the argument of counsel, and for the

reasons set forth below, **overrules** the Trustee's Objection to Claimed Exemptions, and determines the entirety of the funds held in the Debtor's IRA is exempt.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and Bankruptcy Rule 9014.

## BACKGROUND

The instant controversy emanates from the Debtor's filing of his voluntary chapter 7 petition on March 18, 2005. Contemporaneously, the Debtor filed his bankruptcy schedules, and under Schedule C—Property Claimed as Exempt, listed his individual retirement account ("IRA") maintained with SmithBarney citigroup ("SmithBarney") in the amount of $178,000. As his authority supporting his claim of exemption for his IRA, the Debtor cited Florida Statutes § 222.21. Subparagraph (2)(a) of this statute provides an exemption from claims of creditors for funds maintained in a retirement or pension plan which has been pre-approved by the Internal Revenue Service as exempt from taxation. The Trustee filed his initial objection to claimed exemptions on May 20, 2005 (C.P. 5), contending that the $178,000.00 maintained in the Smith Barney IRA was derived from funds received by the Debtor pursuant to his employee stock ownership plan maintained through his former employer, the Carey Winston Company of Chevy Chase, Maryland. On June 29, 2005, the Debtor filed his Amendment to Schedules (C.P. 13), whereby the Debtor amended his Schedule C—Property Claimed as Exempt. With regard to the Debtor's claimed exemption relating to his individual retirement account, the Debtor

amended Schedule C—Property Claimed as Exempt, again claiming his SmithBarney IRA to be exempt, but providing, as his authority for the claimed exemption:

11 U.S.C. § 541(c)(2) and Fla. Stat. § 222.21.

In response, the Trustee filed his pending Objection to Claimed Exemptions, again asserting that the funds maintained in the Debtor's IRA were generated through his employee stock ownership plan ("ESOP") deriving from his employment with Carey Winston Company. More specifically, it is the Trustee's position that the Debtor's transfer of funds from his ESOP into his IRA represents a transfer of a non-exempt asset into a form of investment (an individual retirement account) which otherwise would be exempt. By virtue of the referenced transfer, the Trustee contends that the Debtor's IRA "lost its exemption status" (C.P. 17—¶ 5).

It is uncontroverted that the Debtor was employed by the Carey Winston Company, a mortgage brokerage firm, from 1962 through 1982, when the Debtor terminated his employment. Throughout the term of his employment, the Debtor was a "Participant" in the Carey Winston Company Employee Stock Ownership Plan (Debtor's Ex. A). The ESOP was administered by a Committee consisting of at least two members, membership of which was designated by the Plan Administrator (Debtor's Ex. A—Section 5.1)[1]. The ESOP provided for the maintenance of separate accounts for each participant (Debtor's Ex. A—¶ 9.1). Any right of a Participant to benefits under ESOP was not subject to voluntary or involuntary transfer or assignment (Debtor's Ex. A—¶ 17.1), and a Participant would be entitled to receive Retirement

---

1. There is no evidence or contention that the Debtor managed or controlled any aspect of the investment of funds in his ESOP.

Benefits only upon a Participant's attainment of his Retirement Date (Debtor's Ex. A—¶ 11). Of particular relevance, the "Retirement Date" of a Participant "...shall mean the later to occur of (i) the date a Participant attains age 65, or (ii) the fifth anniversary of the date the Participant became a Participant...." (Debtor's Ex. A—¶ 2.34). Pursuant to the terms of the ESOP, Participants were neither required nor permitted to make contributions toward their respective ESOP accounts (Debtor's Ex. A—¶ 6.2).

On June 22, 2001, almost twenty years after the Debtor had concluded his employment with The Carey Winston Company, the Debtor requested a $25,000 loan from his former employer, then known as Transwestern Carey Winston, to be collateralized by the accumulated value in his ESOP (Debtor's Ex. F). As of the date of his request, the Debtor was 62 years old. Notwithstanding the fact that the Debtor's benefits under his ESOP were fully vested (Debtor's Ex. A—¶ 14.1), his loan request was rejected by Transwestern Commercial Services, the Plan Administrator for The Carey Winston Company Employee Stock Ownership Plan (Debtor's Ex. G—pg. 1). Thereafter, on August 26, 2004, and after having attained his 65th birthday, the Debtor submitted his Distribution Election for his ESOP (Debtor's Ex. G—pg. 2). On or about September 24, 2004, the checks totaling $162,190.21 were issued by or on account of the ESOP (Debtor's Ex. G— pgs. 3, 4 and 8). Simultaneously, the funds were rolled over and transferred into the Debtor's IRA account maintained with SmithBarney (Debtor's Ex. G—pg. 9; Debtor's Ex. H; Trustee's Ex. 11). An examination of Debtor's Exhibits G and H, and Trustee's Exhibit 11, reveals that all of the proceeds from the rollover of the Debtor's Carey Winston Company ESOP were transferred into the Debtor's IRA.

The gravamen of the Debtor's argument is that the $162,190.21 transferred from his ESOP into his IRA account constituted assets held in a spendthrift trust. By claiming that the proceeds derived from the ESOP are exempt pursuant to 11 U.S.C. § 541(c)(2), the Debtor effectively contends that such proceeds ("rollover proceeds") were held in a spendthrift trust. Section 541(c)(2) provides:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title.

As noted in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), "[t]he natural reading of the provision entitles the debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law". Typically, in this Circuit, the cited reference to "applicable non-bankruptcy law" invokes state spendthrift trust law. *In re Brown*, 303 F.3d 1261 (11th Cir.2002); *rehearing denied* 67 Fed.Appx. 590 (11th Cir.2002).

Under Florida law, the purpose of a spendthrift trust is to protect the beneficiary not only from himself, but also from his creditors. *Croom v. Ocala Plumbing & Electric Co.*, 62 Fla. 460, 57 So. 243 (1911); *In re Spears*, 121 B.R. 896 (Bankr. M.D.Fla.1990). *Sub judice*, at the hearing on the Objection to Claimed Exemptions, the Trustee placed considerable reliance upon the decisions of *In re Spears*, 121 B.R. 896 (Bankr.M.D.Fla.1990) and *In re Nichols*, 42 B.R. 772 (Bankr.M.D.Fla. 1984). The Trustee's reliance upon *Spears* and *Nichols* is misplaced. In *Spears*, the debtor was able to reach his vested interest under the employee stock ownership plan by reaching age 55 and after ten years of service to his employer, and was

entitled to receive his full vested interest upon termination of his employment. Unlike *Spears*, Mr. Kane had no right or ability to reach his vested interest in his ESOP by terminating his employment prior to attaining retirement age. Indeed, his request to borrow $25,000 against the proceeds held pursuant to his ESOP was denied. As to the Trustee's reliance upon *Nichols*, the instant Debtor, unlike the debtor in *Nichols*, could not compel a distribution of any portion of his vested interest in his employee stock ownership plan, and also, was unable to borrow against his employee stock ownership plan interest.

Since the Debtor's interest in his ESOP meets the requisite for a spendthrift trust under Florida law, such interest is excluded from the instant bankruptcy estate. *See, In re Brown, supra.* at 1265. As the Debtor's ESOP proceeds did not constitute property of this estate, his rollover of the proceeds into his SmithBarney IRA did not vitiate the exempt nature of his individual retirement account. Accordingly, the Trustee's Objection to Amended Claimed Exemptions and Application for Turnover is **overruled**.